**EXHIBIT "1"**





REALTOR®

GALINDO GROUP
REAL ESTATE

EQUAL HOUSING
OPPORTUNITY

## RESIDENTIAL PURCHASE AGREEMENT

(Joint Escrow Instructions)

1
2                                                               Date: _____ **08/14/17** _____
3
4   ___**Red Rock Region Investments LLC**_____ ("Buyer"), hereby offers to purchase
5   **10710 HOBBITON**_____ ("Property"), within the
6   city or unincorporated area of _____**LASVEGAS**_____, County of _____**CLARK**_____, State of Nevada,
7   Zip _____**89135**_____, A.P.N. # ____**164-12-213-019**____ for the purchase price of $ _____**600,000.00**_____
8   (_____**Six Hundred Thousand**_____dollars) ("Purchase Price") on the terms and conditions
9   contained herein: BUYER ☐ does –OR– ☒ does not intend to occupy the Property as a residence.
10

## Buyer's Offer

11
12   **1.     FINANCIAL TERMS & CONDITIONS:**
13   $ _**10,000.00**___   **A. EARNEST MONEY DEPOSIT** ("EMD") is ☐ presented with this offer –OR– ☒ _**to be deposited**_
14                          _**within 48 hours of acceptance**_____ . Upon Acceptance, Earnest Money to be
15                          deposited within one (1) business day from acceptance of offer (as defined in Section 23 herein)  or  ____
16                          business days if wired to: ☒ Escrow Holder, ☐ Buyer's Broker's Trust Account, –OR– ☐ Seller's Broker's
17                          Trust Account. *(NOTE:  It is a felony in the State of Nevada—punishable by up to four years in prison and a $5,000*
18                          *fine—to write a check for which there are insufficient funds.  NRS 193.130(2)(d).)*
19
20   $ ___**0.00**___   **B. ADDITIONAL DEPOSIT** to be placed in escrow on or before (date) _____ .  The
21                          additional deposit ☐ will –OR– ☐ will not be considered part of the EMD. (Any conditions on the additional
22                          deposit should be set forth in Section 28 herein.)
23
24   $ ___**--**___   **C. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING FOR A <u>NEW LOAN</u>:**
25                          ☐ Conventional,  ☐ FHA,  ☐ VA,  ☐ Other (specify) _____ .
26
27   $ ___**0.00**___   **D. THIS AGREEMENT IS CONTINGENT UPON BUYER QUALIFYING TO <u>ASSUME THE</u>**
28                          **<u>FOLLOWING EXISTING LOAN(S)</u>:**
29                          ☐ Conventional,  ☐ FHA,  ☐ VA,  ☐ Other (specify) _____ .
30                          Interest: ☐ Fixed rate,_____ years – OR – ☐  Adjustable Rate,_____ years.  Seller further agrees to
31                          provide the Promissory Note and the most recent monthly statement of all loans to be assumed by Buyer
32                          within FIVE (5) calendar days of acceptance of offer.
33
34   $ ___**--**___   **E. BUYER TO EXECUTE a <u>PROMISSORY NOTE SECURED BY DEED OF TRUST</u> PER TERMS**
35                          **IN"FINANCING ADDENDUM" which is attached hereto.**
36
37   $ _**590,000.00**__   **F. BALANCE OF PURCHASE PRICE** (Balance of Down Payment) in Good Funds to be paid prior to
38                          Close of Escrow ("COE").
39
40   $ _**600,000.00**__   **G. TOTAL PURCHASE PRICE.**  (This price DOES NOT include closing costs, prorations, or other fees
41                          and costs associated with the purchase of the Property as defined herein.)
42
43   **2.     ADDITIONAL FINANCIAL TERMS & CONTINGENCIES:**
44
45         **A.     NEW LOAN APPLICATION:** Within _**--**_ business days of Acceptance, Buyer agrees to (1) submit a

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is
otherwise modified by addendum or counteroffer.**

Buyer's Name:  **Red Rock Region Investments LLC**_____               BUYER(S) INITIALS: [ _GG_ ] ___/___

Property Address:  **10710 HOBBITON**_____               SELLER(S) INITIALS: [ _VN_ ] ___/___

This form presented by Joshua F Galindo | Galindo Group Real Estate | 702-300-8484 |
Josh@JoshuaGalindo.me

InstanetFORMS

1 completed loan application to a lender of Buyer's choice and (2) furnish a preapproval letter to Seller based upon a standard
2 factual credit report and review of debt to income ratios. If Buyer fails to complete any of these conditions within the
3 applicable time frame, Seller reserves the right to terminate this Agreement. In such event, both parties agree to cancel the
4 escrow and return EMD to Buyer. Buyer shall use Buyer's best efforts to obtain financing under the terms and conditions
5 outlined in this Agreement.
6
7       **B.**     **APPRAISAL CONTINGENCY:** Buyer's obligation to purchase the property is contingent upon the property
8 appraising for not less than the Purchase Price. If after the completion of an appraisal by a licensed appraiser, Buyer receives written
9 notice from the lender or the appraiser that the Property has appraised for less than the purchase price (a "Notice
10 of Appraised Value") Buyer may attempt to renegotiate or cancel the RPA by providing written notice to the Seller (with a copy of
11 the Appraisal) no later than ____--____ calendar days after Acceptance of the RPA; whereupon the EMD shall be released to the
12 Buyer without the requirement of written authorization from Seller. **If this Residential Purchase Agreement is not cancelled, in**
13 **writing on or before the Appraisal Deadline, Buyer shall be deemed to have waived the appraisal contingency.**
14
15       **C.**     **LOAN CONTINGENCY:** Buyer's obligation to purchase the property is contingent upon Buyer obtaining the
16 loan referenced in Section 1(C) or 1(D) of the RPA unless otherwise agreed in writing. Buyer shall remove the loan contingency in
17 writing, attempt to renegotiate, or cancel the RPA by providing written notice to the Seller no later than ____--____ calendar
18 days after Acceptance of the RPA; whereupon the EMD shall be released to the Buyer without the requirement of written
19 authorization from Seller. **IF this Residential Purchase Agreement is not cancelled, in writing on or before the Loan**
20 **Contingency Deadline, Buyer shall be deemed to have waived the loan contingency**
21
22       **D.**     **CASH PURCHASE:** Within __1__ business days of Acceptance, Buyer agrees to provide written evidence
23 from a bona fide financial institution of sufficient cash available to complete this purchase. If Buyer does not submit the
24 written evidence within the above period, Seller reserves the right to terminate this Agreement.
25
26 **3.**     **SALE OF OTHER PROPERTY:** This Agreement ☒ is not –OR– ☐ is contingent upon the sale (and closing) of
27 another property which address is_____--------_____.
28 Said Property ☐ **is** ☐ **is not currently listed –OR–** ☐ **is** presently in escrow with _____----_____.
29 Escrow Number: _____----_____.    Proposed Closing Date: _____-----_____.
30
31 When Buyer has accepted an offer on the sale of this other property, Buyer will promptly deliver a written notice of the sale to
32 Seller. If Buyer's escrow on this other property is terminated, abandoned, or does not close on time, this Agreement will
33 terminate without further notice unless the parties agree otherwise in writing. If Seller accepts a bona fide written offer from a
34 third party prior to Buyer's delivery of notice of acceptance of an offer on the sale of Buyer's property, Seller shall give Buyer
35 written notice of that fact. Within three (3) calendar days of receipt of the notice, Buyer will waive the contingency of the sale
36 and closing of Buyer's other property, or this Agreement will terminate without further notice. In order to be effective, the
37 waiver of contingency must be accompanied by reasonable evidence that funds needed to close escrow will be available and
38 Buyer's ability to obtain financing is not contingent upon the sale and/or close of any other property.
39
40 **4.**     **FIXTURES AND PERSONAL PROPERTY:** The following items will be transferred, free of liens, with the sale of
41 the Property with no real value unless stated otherwise herein. Unless an item is covered under Section 7(F) of this Agreement,
42 all items are transferred in an "AS IS" condition. All EXISTING fixtures and fittings including, but not limited to: electrical,
43 mechanical, lighting, plumbing and heating fixtures, ceiling fan(s), fireplace insert(s), gas logs and grates, solar power
44 system(s), built-in appliance(s) including ranges/ovens, window and door screens, awnings, shutters, window coverings,
45 attached floor covering(s), television antenna(s), satellite dish(es), private integrated telephone systems, air
46 coolers/conditioner(s), pool/spa equipment, garage door opener(s)/remote control(s), mailbox, in-ground landscaping,
47 trees/shrub(s), water softener(s), water purifiers, security systems/alarm(s);
48
49 The following additional items of personal property: **Per MLS dated 8/14/17** _____
50 _____
51 **5.**     **ESCROW:**
52
53       **A.**     **OPENING OF ESCROW:**  The purchase of the Property shall be consummated through Escrow
54 ("Escrow"). Opening of Escrow shall take place by the end of one (1) business day after Acceptance of this Agreement

*Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.*

Buyer's Name: **Red Rock Region Investments LLC** _____    BUYER(S) INITIALS ___/____

Property Address: **10710 HOBBITON** _____    SELLER(S) INITIALS ___/____

This form presented by Joshua F Galindo | Galindo Group Real Estate | 702-300-8484 |
Josh@JoshuaGalindo.me

InstanetFORMS

1    ("Opening of Escrow"), at _____**National Title**_____ title or escrow company ("Escrow Company" or
2    "ESCROW HOLDER") with _____**Jennifer Clifton**_____ ("Escrow Officer") (or such other escrow officer as
3    Escrow Company may assign).   Opening of Escrow shall occur upon Escrow Company's receipt of this fully accepted
4    Agreement. ESCROW HOLDER is instructed to notify the Parties (through their respective Agents) of the opening date and
5    the Escrow Number.
6
7         **B.      EARNEST MONEY:** Upon Acceptance, Buyer's EMD as shown in Section 1(A), and 1(B) if applicable, of
8    this Agreement, shall be deposited pursuant to the language in Section 1(A) and 1(B) if applicable.
9
10        **C.      CLOSE OF ESCROW:** Close of Escrow ("COE") shall be on or before:
11   __**7 Days from court approval**__ (date).  If the designated date falls on a weekend or holiday, COE shall be the next business
12   day.
13
14        **D.      IRS DISCLOSURE:** Seller is hereby made aware that there is a regulation that requires all ESCROW
15   HOLDERS to complete a modified 1099 form, based upon specific information known only between parties in this transaction
16   and the ESCROW HOLDER.  Seller is also made aware that ESCROW HOLDER is required by federal law to provide this
17   information to the Internal Revenue Service after COE in the manner prescribed by federal law.
18
19   **6.      TITLE INSURANCE:**  This Purchase Agreement is contingent upon the Seller's ability to deliver, good and
20   marketable title as evidenced by a policy of title insurance, naming Buyer as the insured in an amount equal to the purchase
21   price, furnished by the title company identified in Section 5(A). Said policy shall be in the form necessary to effectuate
22   marketable title or its equivalent and shall be paid for as set forth in Section 8(A).
23
24   **7.      BUYER'S DUE DILIGENCE**: Buyer's obligation **is** [✔] **is not** ____ conditioned on the Buyer's Due Diligence as
25   defined in this section 7(A) below. This condition is referred to as the "Due Diligence Condition" if checked in the affirmative,
26   Sections 7 (A) through (C) shall apply; otherwise they do not. Buyer shall have ____**7**____ calendar days from Acceptance (as
27   defined in Section 23 herein) to complete Buyer's Due Diligence. Seller agrees to cooperate with Buyer's Due Diligence.
28   **Seller shall ensure that all necessary utilities (gas, power and water) and all operable pilot lights are on for Buyer's**
29   **investigations and through the close of escrow.**
30
31        **A.      PROPERTY INSPECTION/CONDITION:**  During the Due Diligence Period, Buyer shall take such
32   action as Buyer deems necessary to determine whether the Property is satisfactory to Buyer including, but not limited to,
33   whether the Property is insurable to Buyer's satisfaction, whether there are unsatisfactory conditions surrounding or otherwise
34   affecting the Property (such as location of flood zones, airport noise, noxious fumes or odors, environmental substances or
35   hazards, whether the Property is properly zoned, locality to freeways, railroads, places of worship, schools, etc.) or any other
36   concerns Buyer may have related to the Property.   During such Period, Buyer shall have the right to conduct, non-invasive/
37   non-destructive inspections of all structural, roofing, mechanical, electrical, plumbing, heating/air conditioning,
38   water/well/septic, pool/spa, survey, square footage, and any other property or systems, through licensed and bonded contractors
39   or other qualified professionals. Seller agrees to provide reasonable access to the Property to Buyer and Buyer's inspectors.
40   Buyer agrees to indemnify and hold Seller harmless with respect to any injuries suffered by Buyer or third parties present at
41   Buyer's request while on Seller's Property conducting such inspections, tests or walk-throughs. Buyer's indemnity shall not
42   apply to any injuries suffered by Buyer or third parties present at Buyer's request that are the result of an intentional tort, gross
43   negligence or any misconduct or omission by Seller, Seller's Agent or other third parties on the Property.  Buyer is advised to
44   consult with appropriate professionals regarding neighborhood or Property conditions, including but not limited to: schools;
45   proximity and adequacy of law enforcement; proximity to commercial, industrial, or agricultural activities; crime statistics; fire
46   protection; other governmental services; existing and proposed transportation; construction and development; noise or odor
47   from any source; and other nuisances, hazards or circumstances.  If Buyer cancels this Agreement due to a specific inspection
48   report, Buyer shall provide Seller at the time of cancellation with a copy of the report containing the name, address, and
49   telephone number of the inspector.
50
51        **B.      BUYER'S RIGHT TO CANCEL OR RESOLVE OBJECTIONS:**  If Buyer determines, in Buyer's sole
52   discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence
53   Deadline referenced in Section 7, cancel the Residential Purchase Agreement by  providing written notice to the Seller,
54   whereupon the Earnest Money Deposit referenced in Section 1(A) shall be released to the Buyer without the requirement of
55   further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 7, resolve in

---

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is
otherwise modified by addendum or counteroffer.

Buyer's Name: __Red Rock Region Investments LLC__                                 BUYER(S) INITIALS: [CC]

Property Address: __10710 HOBBITON__                                              SELLER(S) INITIALS: [VN]

**Rev. 06/17**                        ©2017 Greater Las Vegas Association of REALTORS®                   Page 3 of 10

writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

**C.    FAILURE TO CANCEL OR RESOLVE OBJECTIONS**:  If Buyer fails to cancel the Residential Purchase Agreement or fails to resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 7, **Buyer shall be deemed to have waived the Due Diligence Condition.**

_____ **Buyer's Initials**    _____ **Buyer's Initials**

**D.    INSPECTIONS:** Acceptance of this offer is subject to the following reserved right.  Buyer may have the Property inspected and select the licensed contractors, certified building inspectors and/or other qualified professionals who will inspect the Property.  Seller will ensure that necessary utilities (gas, power and water and all operable pilot lights) are turned on and supplied to the Property within two (2) business days after Acceptance of this Agreement, to remain on until COE.  *It is strongly recommended that Buyer retain licensed Nevada professionals to conduct inspections.* If any inspection is not completed and requested repairs are not delivered to Seller within the Due Diligence Period, Buyer is deemed to have waived the right to that inspection and Seller's liability for the cost of all repairs that inspection would have reasonably identified had it been conducted, except as otherwise provided by law. The foregoing expenses for inspections will be paid outside of Escrow unless the Parties present instructions to the contrary prior to COE, along with the applicable invoice.

(Identify which party shall pay for the inspection noted below either: SELLER, BUYER, 50/50, WAIVED or N/A.)

| Type | Paid By | Type | Paid By | Type | Paid By |
|---|---|---|---|---|---|
| Energy Audit | Waived | Fungal Contaminant Inspection | Waived | Well Inspection (Quantity) | Waived |
| Home Inspection | Buyer | Mechanical Inspection | Waived | Well Inspection (Quality) | Waived |
| Termite/Pest Inspection | Waived | Pool/Spa Inspection | Waived | Wood-Burning Device/ Chimney Inspection | Waived |
| Roof Inspection | Waived | Soils Inspection | Waived | Septic Inspection | Waived |
| Septic Lid Removal | Waived | Septic Pumping | Waived | Structural Inspection | Waived |
| Survey (type): | Waived | Other: | N/A | Other: | N/A |

**E.    CERTIFICATIONS:**  In the event an inspection reveals areas of concern with the roof, septic system, well, wood burning device/chimney or the possible presence of a fungal contaminant, Buyer reserves the right to require a certification.   The expenses for certifications will be paid outside of Escrow unless the Parties present instructions to the contrary prior to COE (along with the applicable invoice). A certification is not a warranty.

**F.    BUYER'S REQUEST FOR REPAIRS:** It is Buyer's responsibility to inspect the Property sufficiently as to satisfy Buyer's use.  Buyer reserves the right to request repairs, based upon the Seller's Real Property Disclosure or items which materially affect value or use of the Property revealed by an inspection, certification or appraisal. Items of a general maintenance or cosmetic nature which do not materially affect value or use of the Property, which existed at the time of Acceptance and which are not expressly addressed in this Agreement are deemed accepted by the Buyer, except as otherwise provided in this Agreement. The Brokers herein have no responsibility to assist in the payment of any repair, correction or deferred maintenance on the Property which may have been revealed by the above inspections, agreed upon by the Buyer and Seller or requested by one party.

**8.    FEES, AND PRORATIONS** (Identify which party shall pay the costs noted below either: SELLER, BUYER, 50/50, WAIVED or N/A.)

**A.    TITLE, ESCROW & APPRAISAL FEES**:

| Type | Paid By | Type | Paid By | Type | Paid By |
|---|---|---|---|---|---|
| Escrow Fees | 50/50 | Lender's Title Policy | N/A | Owner's Title Policy | Seller |
| Real Property Transfer Tax | Seller | Appraisal | Waived | Other: | N/A |

**B.    PRORATIONS:** Any and all rents, taxes, interest, homeowner association fees, trash service fees, payments on bonds, SIDs, LIDs, and assessments assumed by the Buyer, and other expenses of the property shall be prorated as of the date of the recordation of the deed.  Security deposits, advance rentals or considerations involving future lease credits shall be

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name:  Red Rock Region Investments LLC _____

Property Address:  10710 HOBBITON _____

BUYER(S) INITIALS:

SELLER(S) INITIALS:

This form presented by Joshua F Galindo | Galindo Group Real Estate | 702-300-8484 | Josh@JoshuaGalindo.me

InstanetFORMS

1  credited to the Buyer. All prorations will be based on a 30-day month and will be calculated as of COE.  Prorations will be
2  based upon figures available at closing.  Any supplementals or adjustments that occur after COE will be handled by the parties
3  outside of Escrow.

4  **C.    PRELIMINARY TITLE REPORT:** Within ten (10) business days of Opening of Escrow, Title Company
5  shall provide Buyer with a Preliminary Title Report ("PTR") to review, which must be approved or rejected within five (5)
6  business days of receipt thereof.  If Buyer does not object to the PTR within the period specified above, the PTR shall be
7  deemed accepted.  If Buyer makes an objection to any item(s) contained within the PTR, Seller shall have five (5) business
8  days after receipt of objections to correct or address the objections.  If, within the time specified, Seller fails to have each such
9  exception removed or to correct each such objection, Buyer shall have the option to: (a) terminate this Agreement by providing
10 notice to Seller and Escrow Officer, entitling Buyer to a refund of the EMD or (b) elect to accept title to the Property as is.  All
11 title exceptions approved or deemed accepted are hereafter collectively referred to as the "Permitted Exceptions."

12

13 **D.    LENDER AND CLOSING FEES:  In addition** to Seller's expenses identified herein, Seller will contribute
14 $_____0.00_____ to Buyer's Lender's Fees and/or Buyer's Title and Escrow Fees ☐ **including  –OR– ☒ excluding**
15 costs which Seller must pay pursuant to loan program requirements. Different loan types (e.g., FHA, VA, conventional) have
16 different appraisal and financing requirements, which will affect the parties' rights and costs under this Agreement.

17

18 **E.    HOME PROTECTION PLAN:** Buyer and Seller acknowledge that they have been made aware of Home
19 Protection Plans that provide coverage to Buyer after COE.  **Buyer ☒ waives –OR– ☐ requires** a Home Protection Plan with
20 _____N/A_____. ☐ **Seller –OR– ☐ Buyer** will pay for the Home Protection
21 Plan at a price not to exceed $_____0.00_____. **Buyer** will order the Home Protection Plan. Neither Seller nor Brokers make
22 any representation as to the extent of coverage or deductibles of such plans.

23

24 **9.    TRANSFER OF TITLE:**  Upon COE, Buyer shall tender to Seller the agreed upon Purchase Price, and Seller shall
25 tender to Buyer marketable title to the Property free of all encumbrances other than (1) current real property taxes,
26 (2) covenants, conditions and restrictions (CC&R's) and related restrictions, (3) zoning or master plan restrictions and public
27 utility easements; and (4) obligations assumed and encumbrances accepted by Buyer prior to COE. Buyer is advised the
28 Property may be reassessed after COE which may result in a real property tax increase or decrease.

29

30 **10.    COMMON-INTEREST COMMUNITIES:** If the Property is subject to a Common Interest Community ("CIC"),
31 **Seller shall provide AT SELLER's EXPENSE the CIC documents as required by NRS 116.4109** (collectively, the "resale
32 package"). Seller shall request the resale package within two (2) business days of Acceptance and provide the same to Buyer
33 within one (1) business day of Seller's receipt thereof.

34

35 • **Pursuant to NRS 116.4109, Buyer may cancel this Agreement without penalty until midnight of the fifth (5th)**
36 **calendar day following the date of receipt of the resale package.** If Buyer elects to cancel this Agreement pursuant
37 to this statute, he/she must deliver, via hand delivery, prepaid U.S. mail, or electronic transmission, a written notice of
38 cancellation to Seller or his or her authorized agent.
39 • **If Buyer does not receive the resale package within fifteen (15) calendar days of Acceptance, this Agreement**
40 **may be cancelled in full by Buyer without penalty.** Notice of cancellation shall be delivered pursuant to Section 24
41 of the RPA.
42 • Upon such written cancellation, Buyer shall promptly receive a refund of the EMD. The parties agree to execute any
43 documents requested by ESCROW HOLDER to facilitate the refund. If written cancellation is not received within the
44 specified time period, the resale package will be deemed approved. Seller shall pay all outstanding CIC fines or
45 penalties at COE.

46

47 **A.    CIC RELATED EXPENSES:**  (Identify which party shall pay the costs noted below either: SELLER,
48 BUYER, 50/50, WAIVED or N/A.)

49

| **Type** | **Paid By** | **Type** | **Paid By** | **Type** | **Paid By** |
|---|---|---|---|---|---|
| CIC Demand | Seller | CIC Capital Contribution | Seller | CIC Transfer Fees | Seller |
| Other: _____ | N/A | | | | |

50

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: Red Rock Region Investments LLC _____

Property Address: 10710 HOBBITON _____

BUYER(S) INITIALS: [initials]

SELLER(S) INITIALS [initials]

This form presented by Joshua F Galindo | Galindo Group Real Estate | 702-300-8484 |
Josh@JoshuaGalindo.me

InstanetFORMS

11.     **DISCLOSURES:  Within five (5) calendar days of Acceptance of this Agreement,** Seller will provide the following Disclosures and/or documents. **Check applicable boxes.**

☒     **Seller Real Property Disclosure Form:** (NRS 113.130)     ☐     **Open Range Disclosure:** (NRS 113.065)

☐     **Construction Defect Claims Disclosure:** If Seller has marked "Yes" to Paragraph 1(d) of the Sellers Real Property Disclosure Form (NRS 40.688)

☐     **Lead-Based Paint Disclosure and Acknowledgment:** required if constructed before 1978 (24 CFR 745.113)

☐     **Other:** (list) _____.

12.     **FEDERAL FAIR HOUSING COMPLIANCE AND DISCLOSURES:**  All properties are offered without regard to race, color, religion, sex, national origin, age, gender identity or expression, familial status, sexual orientation, ancestry, or handicap and any other current requirements of federal or state fair housing laws.

13.     **WALK-THROUGH INSPECTION OF PROPERTY:** Buyer is entitled under this Agreement to a walk-through of the Property within ___3___ calendar days prior to COE to ensure the Property and all major systems, appliances, heating/cooling, plumbing and electrical systems and mechanical fixtures are as stated in Seller's Real Property Disclosure Statement, and that the Property and improvements are in the same general condition as when this Agreement was Accepted by Seller and Buyer.  To facilitate Buyer's walk-through, Seller is responsible for keeping all necessary utilities on, including all operable pilot lights.  If any systems cannot be checked by Buyer on walk-through due to non-access or no power/gas/water, then Buyer reserves the right to hold Seller responsible for defects which could not be detected on walk-through because of lack of such access or power/gas/water.  The purpose of the walk-through is to confirm (a) the Property is being maintained (b) repairs, if any, have been completed as agreed, and (c) Seller has complied with Seller's other obligations. **If Buyer elects not to conduct a walk-through inspection prior to COE, then all systems, items and aspects of the Property are deemed satisfactory, and Buyer releases Seller's liability for costs of any repair that would have reasonably been identified by a walk-through inspection, except as otherwise provided by law.**

14.     **DELIVERY OF POSSESSION:** Seller shall deliver the Property along with any keys, alarm codes, garage door opener/controls and, if freely transferable, parking permits and gate transponders outside of Escrow, upon COE.  Seller agrees to vacate the Property and leave the Property in a neat and orderly, broom-clean condition and tender possession no later than ☒COE –OR– ☐ _____.  In the event Seller does not vacate the Property by this time, Seller shall be considered a trespasser in addition to Buyer's other legal and equitable remedies. Any personal property left on the Property after the date indicated in this section shall be considered abandoned by Seller.

15.     **RISK OF LOSS:** Risk of loss shall be governed by NRS 113.040. This law provides generally that if all or any material part of the Property is destroyed before transfer of legal title or possession, Seller cannot enforce the Agreement and Buyer is entitled to recover any portion of the sale price paid.  If legal title or possession has transferred, risk of loss shall shift to Buyer.

16.     **ASSIGNMENT OF THIS AGREEMENT:**  Unless otherwise stated herein, this Agreement is non-assignable unless agreed upon in writing by all parties.

17.     **CANCELLATION OF AGREEMENT:**  In the event this Agreement is properly cancelled in accordance with the terms contained herein, then Buyer will be entitled to a refund of the EMD. Neither Buyer nor Seller will be reimbursed for any expenses incurred in conjunction with due diligence, inspections, appraisals or any other matters pertaining to this transaction (unless otherwise provided herein or except as otherwise provided by law).

18.     **DEFAULT:**

A.     **MEDIATION:** Before any legal action is taken to enforce any term or condition under this Agreement, the parties agree to engage in mediation, a dispute resolution process, through GLVAR. Notwithstanding the foregoing, in the event the Buyer finds it necessary to file a claim for specific performance, this section shall not apply. Each party is encouraged to have an independent lawyer of their choice review this mediation provision before agreeing thereto. By initialing below, the parties confirm that they have read and understand this section and voluntarily agree to the provisions thereof.

**BUYER(S) INITIALS:** [_JG_] / _____     **SELLER(S) INITIALS:** [_VN_] _____

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: Red Rock Region Investments LLC _____     BUYER(S) INITIALS [_JG_] / _____

Property Address: 10710 HOBBITON _____     SELLER(S) INITIALS [_VN_] _____

This form presented by Joshua F Galindo | Galindo Group Real Estate | 702-300-8484 | Josh@JoshuaGalindo.me

InstanetFORMS

**B.    IF SELLER DEFAULTS:** If Seller defaults in performance under this Agreement, Buyer reserves all legal and/or equitable rights (such as specific performance) against Seller, and Buyer may seek to recover Buyer's actual damages incurred by Buyer due to Seller's default.

**C.    IF BUYER DEFAULTS: If Buyer defaults in performance under this Agreement,** as Seller's sole legal recourse, Seller may retain, as liquidated damages, the EMD. In this respect, the Parties agree that Seller's actual damages would be difficult to measure and that the EMD is in fact a reasonable estimate of the damages that Seller would suffer as a result of Buyer's default.  Seller understands that any additional deposit not considered part of the EMD in Section 1(B) herein will be immediately released by ESCROW HOLDER to Buyer.

## Instructions to Escrow

**19.    ESCROW:** If this Agreement or any matter relating hereto shall become the subject of any litigation or controversy, Buyer and Seller agree, jointly and severally, to hold ESCROW HOLDER free and harmless from any loss or expense, except losses or expenses as may arise from ESCROW HOLDER'S negligence or willful misconduct.  If conflicting demands are made or notices served upon ESCROW HOLDER with respect to this Agreement, the parties expressly agree that Escrow is entitled to file a suit in interpleader and obtain an order from the Court authorizing ESCROW HOLDER to deposit all such documents and monies with the Court, and obtain an order from the Court requiring the parties to interplead and litigate their several claims and rights among themselves.  Upon the entry of an order authorizing such Interpleader, ESCROW HOLDER shall be fully released and discharged from any obligations imposed upon it by this Agreement; and ESCROW HOLDER shall not be liable for the sufficiency or correctness as to form, manner, execution or validity of any instrument deposited with it, nor as to the identity, authority or rights of any person executing such instrument, nor for failure of Buyer or Seller to comply with any of the provisions of any agreement, contract or other instrument filed with ESCROW HOLDER or referred to herein. ESCROW HOLDER'S duties hereunder shall be limited to the safekeeping of all monies, instruments or other documents received by it as ESCROW HOLDER, and for their disposition in accordance with the terms of this Agreement.  In the event an action is instituted in connection with this escrow, in which ESCROW HOLDER is named as a party or is otherwise compelled to make an appearance, all costs, expenses, attorney fees, and judgments ESCROW HOLDER may expend or incur in said action, shall be the responsibility of the parties hereto.

**20.    UNCLAIMED FUNDS:**  In the event that funds from this transaction remain in an account, held by ESCROW HOLDER, for such a period of time that they are deemed "abandoned" under the provisions of Chapter 120A of the Nevada Revised Statutes, ESCROW HOLDER is hereby authorized to impose a charge upon the dormant escrow account.  Said charge shall be no less than $5.00 per month and may not exceed the highest rate of charge permitted by statute or regulation. ESCROW HOLDER is further authorized and directed to deduct the charge from the dormant escrow account for as long as the funds are held by ESCROW HOLDER.

## Brokers

**21.    BROKER'S COMPENSATION/FEES:** Buyer herein requires, and Seller agrees, as a condition of this Agreement, that Seller will pay Listing Broker and Buyer's Broker, who becomes by this clause a third party beneficiary to this Agreement, that certain sum and/or percentage of the Purchase Price (commission), that Seller, or Seller's Broker, offered for the procurement of ready, willing and able Buyer via the Multiple Listing Service, any other advertisement or written offer.  Seller understands and agrees that if Seller defaults hereunder, Buyer's Broker, as a third-party beneficiary of this Agreement, has the right to pursue all legal recourse against Seller for any commission due.  **In addition to any amount due to Buyer's Broker from Seller or Seller's Broker, Buyer ☐ will –OR– ☒ will not pay Buyer's Broker additional compensation in an amount determined between the Buyer and Buyer's Broker.**

**22.    WAIVER OF CLAIMS:**  Buyer and Seller agree that they are not relying upon any representations made by Brokers or Broker's agent. Buyer acknowledges that at COE, the Property will be sold AS-IS, WHERE-IS without any representations or warranties, unless expressly stated herein.  Buyer agrees to satisfy himself/herself, as to the condition of the Property, prior to COE.  Buyer acknowledges that any statements of acreage or square footage by Brokers are simply estimates, and Buyer agrees to make such measurements, as Buyer deems necessary, to ascertain actual acreage or square footage.  Buyer waives all

**Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.**

Buyer's Name: ___Red Rock Region Investments LLC___    BUYER(S) INITIALS:

Property Address: ___10710 HOBBITON___    SELLER(S) INITIALS

**Rev. 06/17**    ©2017 Greater Las Vegas Association of REALTORS®    Page 7 of 10

claims against Brokers or their agents for (a) defects in the Property; (b) inaccurate estimates of acreage or square footage; (c) environmental waste or hazards on the Property; (d) the fact that the Property may be in a flood zone; (e) the Property's proximity to freeways, airports or other nuisances; (f) the zoning of the Property; (g) tax consequences; or (h) factors related to Buyer's failure to conduct walk-throughs or inspections. Buyer assumes full responsibility for the foregoing and agrees to conduct such tests, walk-throughs, inspections and research, as Buyer deems necessary. In any event, Broker's liability is limited, under any and all circumstances, to the amount of that Broker's commission/fee received in this transaction.

## Other Matters

**23.   DEFINITIONS:** **"Acceptance"** means the date that both parties have consented to a final, binding contract by affixing their signatures to this Agreement and all counteroffers and said Agreement and all counteroffers have been delivered to both parties pursuant to Section 24 herein. **"Agent"** means a licensee working under a Broker or licensees working under a developer. **"Agreement"** includes this document as well as all accepted counteroffers and addenda. **"Appraisal"** means a written appraisal or Notice of Value as required by any lending institution prepared by a licensed or certified professional. **"Bona Fide"** means genuine. **"Buyer"** means one or more individuals or the entity that intends to purchase the Property. **"Broker"** means the Nevada licensed real estate broker listed herein representing Seller and/or Buyer (and all real estate agents associated therewith). **"Business Day"** excludes Saturdays, Sundays, and legal holidays. **"Calendar Day"** means a calendar day from/to midnight unless otherwise specified. **"CFR"** means the Code of Federal Regulations. **"CIC"** means Common Interest Community (formerly known as "HOA" or homeowners associations). **"CIC Capital Contribution"** means a one-time non-administrative fee, cost or assessment charged by the CIC upon change of ownership. **"CIC Transfer Fees"** means the administrative service fee charged by a CIC to transfer ownership records. **"Close of Escrow (COE)"** means the time of recordation of the deed in Buyer's name. **"Default"** means the failure of a Party to observe or perform any of its material obligations under this Agreement. **"Delivered"** means personally delivered to Parties or respective Agents, transmitted by facsimile machine, electronic means, overnight delivery, or mailed by regular mail. **"Down Payment"** is the Purchase Price less loan amount(s). **"EMD"** means Buyer's earnest money deposit. **"Escrow Holder"** means the neutral party that will handle the closing. **"FHA"** is the U.S. Federal Housing Administration. **"GLVAR"** means the Greater Las Vegas Association of REALTORS®. **"Good Funds"** means an acceptable form of payment determined by ESCROW HOLDER in accordance with NRS 645A.171. **"IRC"** means the Internal Revenue Code (tax code). **"LID"** means Limited Improvement District. **"N/A"** means not applicable. **"NAC"** means Nevada Administrative Code. **"NRS"** means Nevada Revised Statues as Amended. **"Party"** or **"Parties"** means Buyer and Seller. **"PITI"** means principal, interest, taxes, and hazard insurance. **"PMI"** means private mortgage insurance. **"PST"** means Pacific Standard Time, and includes daylight savings time if in effect on the date specified. **"PTR"** means Preliminary Title Report. **"Property"** means the real property and any personal property included in the sale as provided herein. **"Receipt"** means delivery to the party or the party's agent. **"RPA"** means Residential Purchase Agreement. **"Seller"** means one or more individuals or the entity that is the owner of the Property. **"SID"** means Special Improvement District. **"Title Company"** means the company that will provide title insurance. **"USC"** is the United States Code. **"VA"** is the Veterans Administration.

**24.   SIGNATURES, DELIVERY, AND NOTICES:**

A.   This Agreement may be signed by the parties on more than one copy, which, when taken together, each signed copy shall be read as one complete form. This Agreement (and documents related to any resulting transaction) may be signed by the parties manually or digitally. Facsimile signatures may be accepted as original.

B.   When a Party wishes to provide notice as required in this Agreement, such notice shall be sent regular mail, personal delivery, overnight delivery, by facsimile, and/or by electronic transmission to the Agent for that Party. The notification shall be effective when postmarked, received, faxed, delivery confirmed, and/or read receipt confirmed in the case of email. Delivery of all instruments or documents associated with this Agreement shall be delivered to the Agent for Seller or Buyer if represented. Any cancellation notice shall be contemporaneously delivered to Escrow in the same manner.

**25.   IRC 1031 EXCHANGE:** Seller and/or Buyer may make this transaction part of an IRC 1031 exchange. The party electing to make this transaction part of an IRC 1031 exchange will pay all additional expenses associated therewith, at no cost to the other party. The other party agrees to execute any and all documents necessary to effectuate such an exchange.

**26.   OTHER ESSENTIAL TERMS:** Time is of the essence. No change, modification or amendment of this Agreement

*Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.*

Buyer's Name:   Red Rock Region Investments LLC                                          BUYER(S) INITIALS: _____

Property Address:   10710 HOBBITON                                                              SELLER(S) INITIALS: _____

**Rev. 06/17**                              ©2017 Greater Las Vegas Association of REALTORS®                          Page 8 of 10

shall be valid or binding unless such change, modification or amendment shall be in writing and signed by each party.  This Agreement will be binding upon the heirs, beneficiaries and devisees of the parties hereto. This Agreement is executed and intended to be performed in the State of Nevada, and the laws of that state shall govern its interpretation and effect.  The parties agree that the county and state in which the Property is located is the appropriate forum for any action relating to this Agreement.  Should any party hereto retain counsel for the purpose of initiating litigation to enforce or prevent the breach of any provision hereof, or for any other judicial remedy, then the prevailing party shall be entitled to be reimbursed by the losing party for all costs and expenses incurred thereby, including, but not limited to, reasonable attorney's fees and costs incurred by such prevailing party.

**THIS IS A LEGALLY BINDING CONTRACT.**  All parties are advised to seek independent legal and tax advice to review the terms of this Agreement.

**THIS FORM HAS BEEN APPROVED BY THE GREATER LAS VEGAS ASSOCIATION OF REALTORS® (GLVAR). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS.  IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

**This form is available for use by the real estate industry.  It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.**

27.    ADDENDUM(S) ATTACHED:  _____

28.    **ADDITIONAL TERMS:**
`- Buyer to purchase the property "as-is" with no repairs to be made by the seller.`
`- All terms and conditions are subject to bankruptcy court approval pursuant to 11 U.S.C. 363.`
`- Title to be with Jennifer Clifton of National Title`
`- Property to be sold as-is, where-is and in its present condition. Seller makes no warranties or guarantees.`
`- Close of escrow to be within 7 days of bankruptcy court written approval.`

---

## Buyer's Acknowledgement of Offer

**Confirmation of Representation:** The Buyer is represented in this transaction by:

| | |
|---|---|
| Buyer's Broker: **Joshua F Galindo** | Agent's Name: **Joshua F Galindo** |
| Company Name: **Galindo Group Real Estate** | Agent's License Number: **226448** |
| Broker's License Number: **B.1001607.LLC** | Office Address: 8910 W Tropicana #4 |
| Phone: **702-300-8484** | City, State, Zip: **Las Vegas**    **89147** |
| Fax: **866-879-8157** | Email: **Josh@JoshuaGalindo.me** |

**BUYER LICENSEE DISCLOSURE OF INTEREST**:  Pursuant to NRS 645.252(1)(c), a real estate licensee must disclose if he/she is a principal in a transaction or has an interest in a principal to the transaction. Licensee declares that he/she:

___  **DOES NOT** have an interest in a principal to the transaction. **–OR–**

___  **DOES** have the following interest, direct or indirect, in this transaction: ☐ Principal (Buyer) **–OR–** ☐ family or firm relationship with Buyer or ownership interest in Buyer (if Buyer is an entity): (specify relationship) _____.

**Seller must respond by:** _____ (☐AM☒PM) on (month) __August__ , (day) _18_ , (year) __2017__ .  **Unless this**

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is otherwise modified by addendum or counteroffer.

Buyer's Name: **Red Rock Region Investments LLC** _____

Property Address: **10710 HOBBITON** _____

BUYER(S) INITIALS:

SELLER(S) INITIALS:

This form presented by Joshua F Galindo | Galindo Group Real Estate | 702-300-8484 | Josh@JoshuaGalindo.me

InstanetFORMS®

1  Agreement is accepted, rejected or countered below and delivered to the Buyer's Broker before the above date and
2  time, this offer shall lapse and be of no further force and effect.  Upon Acceptance, Buyer agrees to be bound by each
3  provision of this Agreement, and all signed addenda, disclosures, and attachments.

5  _____    Red Rock Region Investments LLC    08/15/2017    9:22 AM    ☐AM☐PM
6  Buyer's Signature    Buyer's Printed Name    Date    Time

8  _____    _____    _____    _____    ☐AM☐PM
9  Buyer's Signature    Buyer's Printed Name    Date    Time

## Seller's Response

12  **Confirmation of Representation:** The Seller is represented in this transaction by:

14  Seller's Broker: _____    Agent's Name: _____ **Ivan Sher**
15  Company Name: **BHHS Nevada Properties**    Agent's License Number: **BS.0046822**
16  Broker's License Number: _____    Office Address: **1215 S Fort Apache Rd Ste 210**
17  Phone: _____ **702-315-0223**    City, State, Zip: **Las Vegas    NV** 89117-5491
18  Fax: _____ **702-313-1881**    Email: **showings@shapiroandsher.com**

20  **SELLER LICENSEE DISCLOSURE OF INTEREST:**  Pursuant to NRS 645.252(1)(c), a real estate licensee must disclose
21  if he/she is a principal in a transaction or has an interest in a principal to the transaction. Licensee declares that he/she:
22  **✗ DOES NOT** have an interest in a principal to the transaction. **–OR–**
23  ___ **DOES** have the following interest, direct or indirect, in this transaction: ☐ Principal (Seller) **–OR–** ☐ family or firm
24  relationship with Seller or ownership interest in Seller (if Seller is an entity): (specify relationship)
25  _____.

27  **FIRPTA:** If applicable (as designated in the Seller's Response herein), Seller agrees to complete, sign, and deliver to  Buyer's
28  FIRPTA Designee a certificate indicating whether Seller is a foreign person or a nonresident alien pursuant to the Foreign
29  Investment in Real Property Tax Act (FIRPTA). A foreign person is a nonresident alien individual; a foreign corporation not
30  treated as a domestic corporation; or a foreign partnership, trust or estate.  A resident alien is not considered a foreign person
31  under FIRPTA. Additional information for determining status may be found at www.irs.gov. Buyer and Seller understand that
32  if Seller is a foreign person then the Buyer must withhold a tax in an amount to be determined by Buyer's FIRPTA Designee in
33  accordance with FIRPTA, unless an exemption applies. Seller agrees to sign and deliver to the Buyer's FIRPTA Designee the
34  necessary documents, to be provided by the Buyer's FIRPTA Designee, to determine if withholding is required. (See 26 USC
35  Section 1445).

37  SELLER DECLARES that he/she **✗ is not –OR– ___ is** a foreign person therefore subjecting this transaction to FIRPTA
38  withholding. **SELLER(S) INITIALS:** _**VN**_ / _____

40  **✗ ACCEPTANCE:** Seller(s) acknowledges that he/she accepts and agrees to be bound by each provision of this Agreement,
41  and all signed addenda, disclosures, and attachments.

43  ___ **COUNTER OFFER:** Seller accepts the terms of this Agreement subject to the attached Counter Offer #1.

45  ___ **REJECTION:** In accordance with NAC 645.632, Seller hereby informs Buyer the offer presented herein **is not** accepted.

47  *Victoria Nelson, Trustee for Doron and Shirah Mashal*    08/16/2017    4:50 PM
48  8/16/2017 4:50:36 PM PDT    ☐AM☐PM
49  Seller's Signature    Seller's Printed Name    Date    Time

52  _____    _____    _____    _____    ☐AM☐PM
53  Seller's Signature    Seller's Printed Name    Date    Time

Each party acknowledges that he/she has read, understood, and agrees to each and every provision of this page unless a particular paragraph is
otherwise modified by addendum or counteroffer.

Buyer's Name: **Red Rock Region Investments LLC**    BUYER(S) INITIALS: _GO_

Property Address: **10710 HOBBITON**    SELLER(S) INITIALS: _VN_

**Rev. 06/17**    ©2017 Greater Las Vegas Association of REALTORS®    Page 10 of 10

This form presented by Joshua F Galindo | Galindo Group Real Estate | 702-300-8484 |
Josh@JoshuaGalindo.me

InstanetFORMS